UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-20912-GAYLES

YURY PICADO,

        Plaintiff,

v.

JAMES REYES, *et al.*,

        Defendants.

_____/

## ORDER DISMISSING AMENDED COMPLAINT

**THIS CAUSE** is before the Court on *pro se* Plaintiff Yury Picado's Amended Complaint pursuant to 42 U.S.C. § 1983. [ECF No. 13]. Plaintiff, a pretrial detainee at the Metro West Detention Center ("Metro West"), alleges that jail officials were deliberately indifferent to his serious medical needs. For the following reasons, the Complaint is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

    **I.**    **BACKGROUND**

The Court accepts the following facts as true for the purposes of screening Plaintiff's Amended Complaint under § 1915(e)(2)(B)(ii). *See Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003). On November 6, 2022, Plaintiff was the victim of a battery and attempted robbery that caused a fracture in the knuckle of his right index finger. [ECF No. 13 at 9]. Plaintiff visited the hospital immediately after the incident and was advised that no orthopedic specialist was on site to cast his hand. *Id.* Plaintiff was given a splint for his hand and scheduled to see an orthopedist at a later date. *Id.*

On November 11, 2022, Plaintiff was arrested and taken to Turner Guilford Knight Correctional Center ("TGK"). *Id*. Upon arrival, Plaintiff was evaluated by a nurse and transported to Jackson Memorial Hospital-West, where he received an x-ray that confirmed the fracture in his right index knuckle. *Id*. However, the hospital again had no orthopedic specialist on site, so the medical staff rewrapped Plaintiff's hand in another splint and sent him back to TGK. *Id*.

Plaintiff spent about two weeks at TGK, during which time he "repeatedly made verbal complaints to both medical person[nel] and correctional officials about how his right hand was in constant c[h]ronic pain with tingling sensations in the fingertips." *Id*. Plaintiff was then transferred to Metro West, where he submitted multiple medical requests and grievances about his hand. *Id*. at 10. Plaintiff was evaluated by jail nurses, who told him "every single time that he had an appointment" to see a doctor. *Id*. Plaintiff also sent "several Inmate Request forms" about his right hand to James Reyes, the Director of the Miami-Dade Corrections and Rehabilitation Department ("MDCR"). *Id*. But Director Reyes never responded to these Inmate Requests, "and Plaintiff believes that this was deliberate." *Id*. Plaintiff was also prescribed Tylenol and Ibuprofen, but "these medications did nothing to lessen the pain he felt every minute of every day." *Id*. "At some point[,] Plaintiff was advised that [the medical director of Jackson Memorial Hospital] Carmelo Berrios was aware of the situation and stated that an appointment had been scheduled." *Id*.

About a month and a half to two months after initiating his requests and grievances, Plaintiff was seen by two doctors, "John Doe #1" ("Dr. Doe #1") and "John Doe #2" ("Dr. Doe #2"). *Id*. These doctors "were told by Plaintiff of the fracture in his hand and had access to medical records that confirmed this assertion[,] yet they failed to provide adequate medical attention to Plaintiff's injury. . . ." *Id*. at 11. On or about February 28, 2023, Plaintiff was taken to Jackson Memorial Hospital-Main, where he was seen by an orthopedic specialist who advised Plaintiff that

"there was nothing she could do to help [him] because too much time had elapsed (three months) between the time of the fracture and her evaluation." *Id*. at 10. The orthopedic specialist recommended physical therapy. *Id*.

Two weeks later, Plaintiff saw a physical therapist, "who told Plaintiff that she could provide him with physical therapy but that it would not help him because his hand had improperly and abnormally healed. . . ." *Id*. Plaintiff states that his "hand still hurts and does not function correctly." *Id*. at 11.

Liberally construed, the Amended Complaint asserts claims for deliberate indifference to serious medical needs[1] against four Defendants in their individual and official capacities: Director Reyes and Dr. Berrios, whom Plaintiff sues under a theory of supervisory liability; and Dr. Doe #1 and Dr. Doe #2, who are doctors employed by Jackson Memorial Hospital's Corrections Health Services, which contracts with MDCR to provide medical care to pretrial detainees. *Id*. at 11.

## II.     LEGAL STANDARD

To state a claim for relief under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Because Plaintiff is seeking leave to proceed *in forma pauperis* ("IFP"), the screening provisions of 28 U.S.C. § 1915(e) apply. *See Dingler v. Georgia*, 725 F. App'x 923, 927 (11th Cir. 2018). Under § 1915(e)(2)(B)(ii), a complaint must be dismissed if it

---

[1] In the "Basis for Jurisdiction" section of the Amended Complaint, Plaintiff also references violations of the Equal Protection Clause of the Fourteenth Amendment and the Florida Constitution. *See* [ECF No. 13 at 4–6]. However, Plaintiff's allegations do not suggest an equal protection claim, and to the extent he raises state law claims, this Court declines to exercise supplemental jurisdiction over any such claims absent a viable federal claim. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (a district court has discretion to decline to exercise supplemental jurisdiction over state law claims where it "has dismissed all claims over which it has original jurisdiction").

fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). The same standard for dismissal under Fed. R. Civ. P. 12(b)(6) applies to § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To survive dismissal under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains merely "'naked assertions' devoid of 'further factual enhancement'" is insufficient to state a claim for relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, the Court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

### III.   DISCUSSION

#### A. Deliberate Indifference to Serious Medical Needs Standard

State officials violate the Eighth Amendment (and similarly the Fourteenth Amendment when applied to pretrial detainees) when they act with deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326–27 (11th Cir. 2007) (holding that the standards are the same under the Eighth and Fourteenth Amendments). To support a claim of deliberate indifference to serious medical needs, a plaintiff must demonstrate (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation. *See Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003). To satisfy the second element, deliberate indifference, a plaintiff must show: (1) subjective knowledge

of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *Goebert*, 510 F.3d at 1327.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments[.]" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020). The Eighth Amendment does not demand "the most effective treatment," nor does it require treatment "to be perfect, the best obtainable, or even very good." *Id.* at 1271 (quotation omitted). "[N]egligence in diagnosis or treatment, or even medical malpractice," does not rise to the level of an Eighth Amendment violation. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Rather, the inmate must show "that the response made by public officials . . . was poor enough to constitute 'an unnecessary and wanton infliction of pain[.]'" *Id.* (quoting *Estelle*, 429 U.S. at 105–06).

The Court assumes that Plaintiff's fracture in his right hand was a serious medical need. Plaintiff has not shown, however, that any Defendant was deliberately indifferent to that need.

### B. Supervisory Claims Against Director Reyes and Dr. Berrios

Plaintiff sues Director Reyes and Dr. Berrios in their supervisory capacity. [ECF No. 13 at 11]. "It is well established . . . that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "When alleging deliberate indifference—medical or otherwise—against a supervisor, a prisoner must show either that (a) the supervisor personally participated in the alleged constitutional deprivation or (b) there is a causal connection between the supervisor's actions and the alleged constitutional deprivation." *Sealey v. Pastrana*, 399 F. App'x 548, 552 (11th Cir. 2010) (citing *Mathews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007)). "The necessary causal connection can be established when a history of

widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quotations and alterations omitted).

Plaintiff's supervisory claim against Director Reyes is based on his allegation that Reyes ignored Plaintiff's Inmate Requests about his hand. This allegation is insufficient to establish supervisory liability. "[I]t is well settled that the filing a grievance with a supervisor does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, *even if the grievance is denied*." *Shorter v. United States*, No. 17-cv-24476, 2018 WL 11236249, at *8 (S.D. Fla. Apr. 17, 2018) (emphasis added); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983."). Plaintiff has not alleged that Director Reyes personally participated in the denial or delay of Plaintiff's medical treatment for his hand. Nor has Plaintiff alleged any causal connection between Reyes' actions and the denial or delay of medical treatment. In fact, Plaintiff does not allege that medical treatment was ever denied—he avers that jail nurses responded to his requests and grievances and prescribed him Tylenol and Ibuprofen, that he was transported to a hospital for x-rays shortly after being admitted to TGK, and that he saw two doctors, an orthopedic specialist, and a physical therapist while at Metro West. [ECF No. 13 at 9–10].

Plaintiff's deliberate indifference claim against Director Reyes is based primarily on his allegation that his appointment with an orthopedic specialist was delayed. *See* [ECF No. 13 at 9]. But Plaintiff does not claim that Director Reyes was responsible for this delay, nor does Plaintiff provide the reason for this delay. *See Farrow*, 320 F.3d at 1247 (quotation omitted) (whether a delay amounts to deliberate indifference "depends on the nature of the medical need and the reason for the delay."). Accordingly, Plaintiff has not shown that Director Reyes was deliberately indifferent in his supervisory capacity.

Plaintiff's supervisory claim against Dr. Berrios fares no better. Plaintiff's only allegations to support this claim are that Dr. Berrios was "placed on notice of [] Plaintiff's injury by [Plaintiff's] filing of v[a]rious sick call requests and grievances," and that Dr. Berrios "stated that an appointment had been scheduled." [ECF No. 13 at 10–11]. These allegations do not show that Dr. Berrios had any role in denying or delaying Plaintiff's medical treatment. Plaintiff has therefore failed to state a supervisory claim against Dr. Berrios.

Plaintiff cannot sustain a supervisory claim against these Defendants for another reason: he has not stated an underlying deliberate indifference claim against the other two Defendants, as explained below. *See Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) (declining to address supervisory claim where plaintiff had proved no underlying constitutional violation); *Barcelona v. Rodriguez*, 847 F. App'x 739, 742 (11th Cir. 2021) ("Because Plaintiff has failed to state a claim for violation of the Eighth Amendment against Officers Rodriguez and Jean-Pierre, he can state no claim for supervisory liability against Captain Martin.").

### C. Claims Against Dr. Doe #1 and Dr. Doe #2

Federal Rule of Civil Procedure 10(a) requires that a pleading "name all the parties[.]" Fed. R. Civ. P. 10(a). In general, "fictitious-party pleading is not permitted in federal court." *Richardson*

*v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). An exception to this rule is where the plaintiff "adequately describe[s] the person to be sued so that the person [can] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992) (alterations added) (noting, for example, that in "a case in which the governor of a state had been sued[,] a pleading . . . specifying only the 'Governor of Alabama' as a defendant would . . . satisfy Fed. R. Civ. P. 10(a) even if the plaintiff did not use the governor's given name.").

Here, Plaintiff identifies Dr. Doe #1 and Dr. Doe #2 as "medical doctors under the employ of Jackson Memorial Hospital's Corrections Health Services[.]" [ECF No. 13 at 11]. This description is inadequate to identify these Defendants among the many doctors employed by Jackson Memorial Hospital. Thus, these Defendants must be dismissed on that basis. *See Richardson*, 598 F.3d at 738 (plaintiff's description of the defendant "as 'John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute'" was "insufficient to identify the defendant among the many guards employed at CCI, and the district court properly dismissed this claim"); *Moulds v. Bullard*, 345 F. App'x 387, 390 (11th Cir. 2009) (affirming dismissal of "John Doe corrections officers" in *pro se* complaint where the plaintiff "completely failed to describe some of those officers" and "gave general descriptions of others, such as by indicating the duty stations to which they were assigned").

Yet even if Plaintiff identified these two Defendants, his allegations still fall short of stating a claim against them. Plaintiff merely alleges that these doctors "were told by Plaintiff of the fracture in his hand and had access to medical records that confirmed this assertion yet they failed to provide adequate medical attention to Plaintiff's injury. . . ." [ECF No. 13 at 11]. Plaintiff does not elaborate on how these doctors "failed to provide adequate medical attention." He does not indicate whether these doctors provided any treatment at all and, if so, what treatment was

rendered. In other words, Plaintiff's allegations provide only "a formulaic recitation of the elements of a cause of action" and "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations omitted). As such, these allegations are insufficient to state plausible claims for deliberate indifference to serious medical needs. *See Lee v. Alachua Cnty., Fla.*, 461 F. App'x 859, 860 (11th Cir. 2012) ("[Plaintiff] alleges that defendants were deliberately indifferent to his medical needs after he was released from the hospital, but he fails to support the claim with factual allegations. Such conclusory allegations do not support a basis for relief"); *Ruiz v. Rummel*, 777 F. App'x 410, 415 (11th Cir. 2019) (finding the plaintiff's allegations that the defendants were "'mercenaries' and 'accomplices' whose conduct in disregarding his need for treatment was 'implicitly knowing and deliberate'" amounted to "naked, conclusory assertions" that were insufficient to state a plausible deliberate indifference claim).

### D. Official-Capacity Claims

Lastly, Plaintiff has not stated an official-capacity claim against any Defendant. Official-capacity claims are simply "another way of pleading an action against an entity of which an officer is an agent," which, in this case, would be MDCR and Jackson Memorial Hospital. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). To state a deliberate indifference claim against MDCR, a municipality, Plaintiff must show that an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (alterations and quotation omitted) (under *Monell*, a plaintiff "must 'identify a municipal policy or custom that caused his injury."). Similarly, to state a deliberate indifference claim against Jackson Memorial Hospital, a private entity that provides medical services to inmates, Plaintiff must allege that the entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right."

*Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Monell*, 436 U.S. at 694). Plaintiff has not alleged that MDCR or Jackson had any policy or custom of deliberate indifference. Thus, Plaintiff has not stated an official-capacity claim.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Amended Complaint [ECF No. 13] is **DISMISSED WITHOUT PREJUDICE**. This case is **CLOSED**, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of November, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   **Yury Picado**, *pro se*
      220158549
      Miami-Dade County-MW
      Metro West
      Inmate Mail/Parcels
      13850 NW 41st Street
      Miami, FL 33178